# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Shilitha C.,                                    Case No. 23-cv-600 (ECW)

    Plaintiff,

v.                                              **ORDER**

Martin J. O'Malley, Commissioner
of Social Security Administration,

    Defendant.

This matter is before the Court on Plaintiff Shilitha C.'s ("Plaintiff") Motion for Summary Judgment (Dkt. 11); and Defendant Commissioner of Social Security Administration, Martin J. O'Malley's ("Commissioner"), Motion for Summary Judgment (Dkt. 16), regarding the denial of Plaintiff's application for supplemental insurance income. The parties have filed briefs "present[ing] for decision" Plaintiff's request for judicial review of the final decision of the Commissioner of Social Security.[1] (*See* Dkts. 12, 17.)

## I.    PROCEDURAL BACKGROUND

On January 25, 2021, Plaintiff filed an application for Supplemental Security Income under Title XVI of the Social Security Act, alleging disability as of December 15,

---

[1]    As of December 1, 2022, Social Security Actions under 42 U.S.C. § 405(g) are "presented for decision on the parties' briefs," rather than summary judgment motions. Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), Rule 5.

2015.  (R. 293-95.)[2]  Plaintiff amended her onset date of disability to the date of her

January 25, 2021 application for benefits.  (R. 394.)  Plaintiff's application was denied

initially on April 23, 2021, and on reconsideration on August 9, 2021.  (R. 158-193.)  On

August 23, 2021, Plaintiff filed a written request for a hearing before an administrative

law judge.  (R. 212-14.)  Plaintiff appeared via telephone with legal counsel and testified

at a hearing on December 10, 2021 before Administrative Law Judge Peter Kimball ("the

ALJ").  (R. 22-33.)

In a decision dated January 20, 2022, the ALJ concluded that Plaintiff was not

disabled.  (R. 204-228.)

Following the five-step sequential evaluation process under 20 C.F.R.

§ 416.920(a),[3] the ALJ first determined at step one that Plaintiff had not engaged in

substantial gainful activity since January 23, 2021.  (R. 24.)

---

[2]     The Administrative Record ("R.") can be found at Docket Entry No. 5.
[3]     The Eighth Circuit described this five-step process as follows:

> The Commissioner of Social Security must evaluate: (1) whether the
> claimant is presently engaged in a substantial gainful activity; (2) whether
> the claimant has a severe impairment that significantly limits the claimant's
> physical or mental ability to perform basic work activities; (3) whether the
> claimant has an impairment that meets or equals a presumptively disabling
> impairment listed in the regulations; (4) whether the claimant has the residual
> functional capacity to perform his or her past relevant work; and (5) if the
> claimant cannot perform the past work, the burden shifts to the
> Commissioner to prove that there are other jobs in the national economy that
> the claimant can perform.

*Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

2

At step two, the ALJ determined that Plaintiff had the following severe impairments: bipolar disorder; depressive disorder; generalized anxiety disorder; post-traumatic stress disorder ("PTSD"); lumbar spondylosis; obesity; right knee arthritis; and asthma.  (R. 24.)

At the third step, the ALJ determined that Plaintiff did not have an impairment that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1.  (R. 25-28.)

At step four, after reviewing the entire record, the ALJ concluded that Plaintiff had the following residual functional capacity ("RFC"):

> [T]o perform light work as defined in 20 CFR 416.967(b) (lift/carry, push/pull up to 20 pounds occasionally and 10 pounds frequently; sit for about 6 hours total in an 8-hour workday) except the claimant is limited to standing and/or walking 4 hours total in an 8-hour workday. The claimant is precluded from climbing ladders, ropes, or scaffolds, and is limited to occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs. The claimant should have no concentrated exposure to dust, odors, fumes, and pulmonary irritants. The claimant is limited to routine tasks that are not performed at a fast production-rate pace, such as that found in assembly-line work.

(R. 28.)

The ALJ concluded, based on the above RFC and the testimony of the vocational expert ("VE"), that given Plaintiff's age, education, work experience, and RFC, that there were other jobs that exist in significant numbers in the national economy that Plaintiff could perform, including work as: a routing clerk (Dictionary of Occupational Titles ("DOT") # 222.687-022), office clerk (DOT# 239.567-010), and router (DOT# 222.587-038).  (R. 32.)

Accordingly, the ALJ deemed Plaintiff not disabled.  (R. 33.)

Plaintiff filed a request for review of this decision, and the Appeals Council denied further review on January 10, 2023, which made the ALJ's decision the final decision of the Commissioner.  (R. 1-7.)

Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).  (Dkt. 1.)

The Court has reviewed the entire administrative record, giving particular attention to the facts and records cited by the parties.  The Court will recount the facts of record only to the extent they are helpful for context or necessary for resolution of the specific issues presented by the parties.[4]

---

[4]      As argued by the Commissioner (Dkt. 17 at 1), Social Security Insurance ("SSI") benefits are not payable for the period prior to the filing of Plaintiff's January 25, 2021 application.  *See* 20 C.F.R. § 416.335 ("When you file an application in the month that you meet all the other requirements for eligibility, the earliest month for which we can pay you benefits is the month following the month you filed the application. If you file an application after the month you first meet all the other requirements for eligibility, we cannot pay you for the month in which your application is filed or any months before that month."); *see also Storey v. Colvin*, No. C 14-4104-MWB, 2015 WL 5970669, at *1 (N.D. Iowa Oct. 14, 2015) ("However, SSI payments are not payable for a period prior to the application date, pursuant to 20 C.F.R. § 416.335, so the relevant period for a determination of whether or not Storey was disabled is from February 14, 2012, the date of his application, through June 11, 2013, the date of the ALJ's decision.").  Although SSI benefits are not payable before the month following the month in which the application was filed, medical records before the application date and close to the onset date are potentially relevant to the period for which the claimant may receive benefits. *See A.S.A. v. Saul*, No. 20-CV-74 (ECW), 2021 WL 1062037, at *3 (D. Minn. Mar. 19, 2021) (quotation omitted), *appeal dismissed*, No. 21-1949, 2021 WL 4959035 (8th Cir. Sept. 15, 2021).  In addition, 20 C.F.R. § 416.912 requires the SSA to develop a claimant's "complete medical history," which includes records from medical sources for "at least the 12 months preceding the month in which you file your application."  In this case, the ALJ expressly considered Plaintiff's complete medical history, citing both 20 C.F.R. §§ 416.335 and 416.912.  (R. 23, 25-31.)  Likewise, the Court has considered all evidence that relates to Plaintiff's impairments during the relevant period.

## II.    RELEVANT RECORD

On February 3, 2020 through October 26, 2020, Plaintiff was seen for depression, anxiety, PTSD, bipolar disorder, anxiety and insomnia.  Plaintiff was assessed with major depressive order, PTSD, and anxiety.  (R. 533, 536.)  Plaintiff reported raising two then three-year-old grandchildren.  (R. 535.)  On June 20, 2020, Plaintiff reported that she needed medication for anxiety, depression, and sleep.  (R. 522.)  Her mental status examination showed that she was oriented, had poor hygiene, a cooperative attitude, a flat affect, that her recent memory was normal and that her attention/concentration were focused.  (R. 524.)  On July 14, 2020, it was noted that Plaintiff's medication had been adjusted, and she was being given Topamax,[5] Abilify,[6] Gabapentin,[7] and Hydroxyzine.[8] (R. 515, 518.)  Plaintiff reported feeling sad, being frustrated, suffering from increased anxiety, and suffering from insomnia.  (R. 515.)  However, Plaintiff reported doing a little better.  (R. 515.)  Her mental status examination was normal.  (R. 518.)

---

[5]    Topamax is indicated for the treatment of seizures and for the preventive treatment of migraine headaches.  *See* https://dailymed.nlm.nih.gov/dailymed/ drugInfo.cfm?setid=21628112-0c47-11df-95b3-498d55d89593 (last visited Feb. 13, 2024).

[6]    Abilify is used to treat bipolar disorder and depression.  *See* https://medlineplus. gov/druginfo/meds/a603012.html#brand-name-1(last visited Feb. 13, 2024).

[7]    Gabapentin is used to treat seizures and neuropathic pain.  *See* https:// medlineplus.gov/druginfo/meds/a694007.html (last visited Feb. 13, 2024).

[8]    Hydroxyzine is used to treat anxiety.  *See* https://medlineplus.gov/ druginfo/meds/a682866.html (last visited Feb. 13, 2024).

On August 14, 2020, Plaintiff reported having chronic pain since 2000, involving chest pain wrapping around to the back, as well as low back and neck pain.  (R. 748.) Plaintiff rated that pain at 3-4 out of 10.  (*Id.*)  Her pain trend was stable, and she coped with her pain using ibuprofen, stretches, and exercises.  (R. 748.)  It was noted that Plaintiff spent her day taking care of her grandchildren, engaging in household chores, running errands, attending appointments, and some light exercises.  (R. 748.)  Her mental health status examination showed that her memory and focus were adequate.  (R. 752.)  It was noted that Plaintiff's PTSD, anxiety, and depression could be accelerating her pain. (R. 753.) Mood and anxiety management was going be part of Plaintiff's treatment of her pain.  (R. 753.)  Her medical provider also noted that "the patient is applying for SSDI for pain, and as such there is a financial incentive to remain disabled by their pain."  (R. 753.)

On September 8, 2020, Plaintiff reported that she was doing better, and her mental status examination was normal.  (R. 503, 506.)  Her provider noted, "[s]he is doing much better, stable on her medications, and night sleep is better with Melatonin and sometimes with Hydroxyzine."  (R. 503.)

On September 29, 2020, Plaintiff again presented for an evaluation of chronic pain that she described as intermittent and located in her lower back, radiating into her right knee with some swelling.  (R. 742.)  She noted numbness and weakness in her right knee. (R. 742.)  She also complained of some neck pain, which was not severe.  (R. 742.) Plaintiff reported her pain was getter better, and was helped by walking, changing positions, ice packs, heat packs, and propping up her knee.  (R. 742.)  Her examination

showed that she had normal range of motion and her psychiatric examination was normal. (R. 743.)  Plaintiff was not interested in following up with pain psychology and noted a benefit from cannabis.  (R. 743.)

On October 6, 2020, Plaintiff was referred to treatment for obesity-associated medical conditions, including prediabetes, sleep apnea, hypertension, and asthma, by aggressive management of weight.  (R. 732.)  Plaintiff was frustrated by her weight.  (R. 733.)  Patient had purchased exercise equipment, but had yet to incorporate it into her weekly routine.  (R. 733.)  Plaintiff claimed she was experiencing back pain, bloating, joint pain, and mood changes.  (R. 734.)  Her physical examination showed she was not in acute distress and that her affect was appropriate.  (R. 737.)  The plan for Plaintiff was to continue treating her obesity-associated medical conditions by aggressive management of her weight.  (R. 737.)  This treatment included 60 minutes of moderate exercise daily for weight maintenance, and 90 minutes daily for actual weight loss.  (R. 738.)

On October 26, 2020, Plaintiff reported that she was more irritable.  (R. 494.)  Plaintiff was doing better, but she had more stress due to the pandemic.  (R. 494.)  Plaintiff reported having to take care of her two grandchildren and was concerned for her daughter, who was doing drugs.  (R. 494.)  Her mental status examination was normal.  (R. 497.)  She was given Trazadone[9] to help with her sleep.  (R. 494, 498.)  Plaintiff was to return in 6-8 weeks.  (R. 498.)

---

[9]     Trazodone is used to treat depression.  *See* https://medlineplus.gov/druginfo/meds/a681038.html (last visited Feb. 13, 2024).

On December 9, 2020, Plaintiff was seen for back pain that she had experienced "off and on since 2004", which had recently become worse.  (R. 557.)  An MRI found no acute finding, with slight disc bulges at several levels.  (R. 557.)  Plaintiff's examination showed she was not in acute distress, had mainly pain with increased extension, was able to rotate without pain, there were no concerns noted with lateral bending, and straight leg raising was negative for pain.  (R. 558.)  In addition, Plaintiff's gait was normal.  (R. 558.)  Further, Plaintiff was negative for numbness, tingling, weakness, limping, hip pain, incontinence or saddle anesthesia, and her muscle strength was a full 5/5 bilaterally.  (R. 557-58).  Plaintiff was given a Medrol[10] Dosepak for the flare of her disc herniation, and was told to consider physical therapy or referral to a spine specialist if the pain did not improve.  (R. 558.)

On January 29, 2021, Plaintiff was seen for right foot pain and a widespread rash consistent with tinea corporis[11] that had been ongoing for two years.  (R. 550, 553.)  The right heel pain was assessed as plantar fasciitis, which had progressively worsened since Plaintiff's last visit.  (R. 550, 553.)  The doctor reviewed the conservative management of her heel pain, including wearing tennis shoes at all times and using an insert, stretching

---

[10]     Medrol is an anti-inflammatory medication.  *See* https://dailymed.nlm.nih.gov/ dailymed/fda/fdaDrugXsl.cfm?setid=39d5270b-d957-4821-93d6-501b7b9f02d4&type =display (last visited Feb. 13, 2024).

[11]     "Tinea corporis is a superficial fungal skin infection of the body caused by dermatophytes."  https://www.ncbi.nlm.nih.gov/books/NBK544360/ (last visited Feb. 13, 2024.)

and icing regularly, taking ibuprofen as needed, and approved hydrocodone-acetaminophen as needed for severe pain.  (R. 553.)

On March 1, 2021, Plaintiff presented with a follow-up for her heel pain.  (R. 899.)  Her pain was worsening, with pain on the bottom of the right heel, lateral aspect, extending towards the front of the foot.  (R. 899.)  There was pain over the right heel upon examination, where the plantar fascia inserts, and pain in this area with resisted plantar flexion of the right foot.  (R. 902.)  Plaintiff was going to have a consult with podiatry, and it was recommended that she continue with stretching, icing, non-steroidal anti-inflammatory drugs.  (R. 902.)  Her Norco[12] was refilled for severe pain.  (R. 902.)  Plaintiff also reported that the medication for ongoing tinea corporis was helping.  (R. 899.)

On April 14, 2021, state agency psychologist Ann Lovko, Ph.D., opined that Plaintiff was not significantly limited as to her ability to carry out very short and simple instructions or ability to carry out detailed instructions; and moderately limited as to her ability to maintain attention and concentration for extended periods.  (R. 174.)  In addition, Dr. Lovko opined that Plaintiff was not significantly limited as to her ability to: perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; or make

---

[12]      Norco is an opioid and acetaminophen combination used for pain relief.  *See* https://www.accessdata.fda.gov/drugsatfda_docs/label/2019/040099s023lbl.pdf (last visited Feb. 13, 2024).

simple work-related decisions. (R. 174-75.) Further, Plaintiff was moderately limited as to her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and as to her ability to perform at a consistent pace without an unreasonable number and length of rest periods. (R. 175.) Plaintiff was also moderately limited as to her ability to interact appropriately with the general public and her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (R. 175.) Plaintiff was not significantly limited as to: her ability to ask simple questions or request assistance; her ability to accept instructions and respond appropriately to criticism from supervisors; or her ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (R. 175-76.) Plaintiff had no adaptation limitations. (R. 176.) Dr. Lovko suggested the following mental RFC for Plaintiff:

> To the extent his/her physical condition permits, the evidence suggests that claimant can understand, remember, and carry out detailed, but not complex tasks. The claimant can relate on a superficial and ongoing basis with co-workers and supervisors. The claimant can attend to tasks for a sufficient period to complete tasks. The claimant can manage the stresses involved with detailed work-related tasks.

(R. 176.)

On April 21, 2021, state agency consultant Mila Bacalla, M.D., found that Plaintiff could occasionally lift and carry 20 pounds; could frequently lift and carry 10 pounds; could stand or walk with normal breaks for about six hours in an eight-hour workday; could sit with normal breaks for about six hours in an eight-hour workday; had an unlimited ability to push or pull; could frequently climb ramps or stairs; could frequently

balance; and could occasionally climb ropes, stoop, kneel, crouch, and crawl. (R. 170-71.) Dr. Bacall also found that Plaintiff had no environmental limitations except for avoiding concentrated exposure to fumes, odors, dust, or poor ventilation, due to a history of asthma. (R. 170-72.)

On June 9, 2021, Plaintiff was again seen with respect to her weight. (R. 877, 969.) Plaintiff reported that she had been walking more and doing workout videos; she noted increased stress due to looking for a new home; reported cramps in her feet and sometimes thighs, occurring mostly in the evening; reported that medical marijuana had been helpful; and reported knee pain and foot swelling/pain. (R. 878.) Plaintiff noted she experienced back and joint pain. (R. 878.) Her examination showed she was not in any distress, no rashes on her skin, and she showed no overt signs of anxiety or depression. (R. 881.)

On June 15, 2021, Plaintiff was seen regarding several concerns. Plaintiff described having muscle cramping and radiating pain that started in the bottom of her feet, travelling to her calves, mid thighs medially, and groin bilaterally. (R. 894.) Plaintiff felt like the symptoms might be related to a pelvic fracture that she suffered a few years ago. (R. 894.) X-rays taken of her hip and pelvis were normal. (R. 907-08, 913-15.) Plaintiff treated her pain with ibuprofen and Tylenol intermittently for this, but sought a refill of hydrocodone.[13] (R. 894.) Plaintiff also sought a refill of inhaler for her mild and intermittent asthma. (R. 894.) Plaintiff reported issues with a chronic rash with

---

[13]    Hydrocodone is used to relieve severe pain. *See* https://medlineplus.gov/druginfo/meds/a614045.html#why (last visited Feb. 13, 2024).

some skin breakdown and scarring.  (R. 894.)  Plaintiff's examination showed that she was not in acute distress and was breathing well.  (R. 897.)  She tolerated both internal and external range of motion of both hips without any pain.  (R. 897.)  There was no swelling in her extremities.  (R. 897.)  Plaintiff also had chronic tinea corporis as well as some Candida Intertrigo[14] in between the breasts, but had not been treating with any medication.  (R. 898.)  Plaintiff's hemoglobin was low, and plans were made for an iron transfusion.  (R. 898.)

Plaintiff stated in her June 30, 2021 Adult Function Report that she was taking care of two of her grandchildren with the help of her 15-year-old daughter.  (R. 363.)

On September 13, 2021, Plaintiff was seen for pain in her right hand that she attributed to an intravenous infusion.  (R. 1017.)  Imaging of the hand was normal and the doctor recommended conservative treatments, including application of ice, gentle range of motion and stretching, and compression with an ACE bandage.  (R. 1017.)  Plaintiff also sought oxycodone for her back pain.  (R. 1017.)

On September 16, 2021, Plaintiff followed up on her iron deficiency and anemia.  (R. 1007.)  Her most recent hemoglobin level was near normal, although her iron stores continued to be low.  (R. 1007.)  Upon examination, Plaintiff appeared healthy, was pleasant, and not in any acute distress.  (R. 1011.)  There was mild palpable tenderness over the posterior lateral left calf, without any erythema or swelling compared to the

---

[14]     Candida Intertrigo is a superficial inflammatory skin condition that becomes infected by the Candida yeast.  *See https://www.ncbi.nlm.nih.gov/books/NBK531489/* (last visited Feb. 13, 2024).

right, and palpable tenderness over the proximal insertion of the plantar fascia on the

bottom of the left foot.  (R. 1011.)  Plaintiff also claimed ongoing hand pain due to an

iron infusion, but the MRI showed no specific findings.  (R. 1011.)

On October 5, 2021, Plaintiff was seen for a psychiatric appointment.  (R. 1025.)

It was noted that Plaintiff had a previous history of depression, anxiety, PTSD, bipolar

disorder, and anxiety for over 17 years after her grandmother died.  (R. 1025.)  Plaintiff

asserted that she was doing much better, stable on her medications, but continued to

struggle with irritability due to stressors and insomnia.  (R. 1025.)  She had been last seen

in October 2020.  (R. 1025.)  Plaintiff's anxiety and depression had returned, and her

sleep was disrupted due to family stressors and a COVID infection, after stopping a

number of medications.  (R. 1025.)  Plaintiff sought a prescription for Topiramate.[15]  (R.

1025.)  The mental status examination of Plaintiff showed that: she was orientated to

time, person, and place; her speech was normal; her mood was normal; she had a logical

thought process and her thought content was goal directed; she had intact insight and

judgment; an intact recent memory; intact attention; and she demonstrated a focused

concentration.  (R. 1029.)

## III.   LEGAL STANDARD

Judicial review of an ALJ's denial of benefits is limited to determining whether

substantial evidence on the record as a whole supports the decision, 42 U.S.C. § 405(g);

*Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018), or whether the ALJ's

---

[15]      *See supra*, fn. 5 related to Topamax, the brand name for Topiramate.

decision results from an error in law, *Nash v. Comm'r, Soc. Sec. Admin.* 907 F.3d 1086, 1089 (8th Cir. 2018). As defined by the Supreme Court:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is more than a mere scintilla. It means— and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

"[T]his court considers evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Nash*, 907 F.3d at 1089 (marks and citation omitted). "If substantial evidence supports the Commissioner's conclusions, this court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome." *Id.* "In other words, if it is possible to reach two inconsistent positions from the evidence, and one of those positions is that of the [ALJ], the Court must affirm the decision." *Jacob R. v. Saul*, No. 19-CV-2298 (HB), 2020 WL 5642489, at *3 (D. Minn. Sept. 22, 2020) (citing *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992)).

## IV. DISCUSSION

Plaintiff asserts in her brief[16] that she is disabled due to a combination of physical and mental impairments including: chronic and widespread pain, depression, asthma,

---

[16]     Pursuant to the Rule 6 of the Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g): "The plaintiff must file and serve on the Commissioner a brief

anemia, anxiety, arthritis, and history of right knee pain and surgery.  (Dkt. 12-1 at 2.)

Plaintiff goes on to argue that:

> Her multiple medical impairments affect her ability to lift and carry, stand, walk and sit for extended periods of time and pain symptoms interfere with her ability to maintain concentration persistence and pace for extended periods, as well as impair her ability to understand, remember and carryout even simple, 1-2 step instructions. Her health conditions are such that they would cause good days and bad days, and on bad days, [Plaintiff] would be unable to attend to her daily activities, let alone complete a full workday, therefore she contends she would miss work in excess of what is typically tolerated in competitive work settings. Because of the foregoing, a finding of disability is warranted in the case at hand.

(*Id.*)

The medical evidence relied on by Plaintiff are records of pain throughout her body she suffered from a period of April 2018 through December 2020.  (*Id.* at 2-3.)

Plaintiff also relies on her mental health ailments of depression, anxiety, PTSD, bipolar

---

for the requested relief within 30 days after the answer is filed . . ."  Plaintiff was notified of this requirement by this Courts's July 6, 2023 Order.  (Dkt. 8.)  Plaintiff, who is proceeding pro se and was granted electronic filing privileges, filed the brief submitted by her attorney at the administrative level to the ALJ as her brief in the present case. (Dkt. 10 (granting privileges); Dkt. 11 (brief); R. 394-99 (attorney's brief to ALJ).).  The Court notes that Plaintiff made a number of arguments in her Complaint and attached several documents to her Complaint.  (Dkts. 1, 1-1.)  Plaintiff's "pro se status does not relieve her of her obligation to follow rules, laws, and court orders."  *Breedlove v. Consol. Vision Grp., Inc.*, No. 20-CV-916 (DWF/TNL), 2021 WL 6066404, at *4 (D. Minn. Nov. 30, 2021), *R. & R. adopted*, 2021 WL 6063242 (D. Minn. Dec. 21, 2021). The Court therefore considers Plaintiff's brief, not the Complaint, in making its decision. Further, Plaintiff sought an extension to file a substantive reply in support of her claim for benefits on October 20, 2023 due to personal issues and because she wished to submit additional medical records.  (Dkt. 18.)  The Court granted that extension request, gave Plaintiff until November 17, 2023 to file her reply, and advised her that "the statute under which she appeals, 42 U.S.C. § 405(g), generally limits the Court's review to the 'pleadings and transcript' of the administrative record before it," and Plaintiff had not shown any basis for departing from that rule.  (Dkt. 22.)  To date, Plaintiff has not filed a reply or any additional materials.

disorder, anxiety, and insomnia in 2020, which increased her pain. (*Id.* at 4.) As to 2021, Plaintiff relies on medical records dealing with a rash, right foot pain involving her heel, obesity, anxiety, asthma, pain, and anemia. (*Id.* at 5.)

"A disability claimant has the burden to establish her RFC." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). The Eighth Circuit has held that "a 'claimant's residual functional capacity is a medical question.'" *Id.* (quoting *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)). "'[S]ome medical evidence' must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace.'" *Id.* (quoting *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam)). However, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citing *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012)). Rather, the RFC should be "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *Id.* (quoting *Myers*, 721 F.3d at 527). Indeed, "'[e]ven though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.'" *Perks*, 687 F.3d at 1092 (quoting *Cox*, 495 F.3d at 619-20) (citations omitted).

As stated previously, the ALJ set forth the following RFC for Plaintiff:

[T]o perform light work as defined in 20 CFR 416.967(b) (lift/carry, push/pull up to 20 pounds occasionally and 10 pounds frequently; sit for about 6 hours total in an 8-hour workday) except the claimant is limited to

16

standing and/or walking 4 hours total in an 8-hour workday. The claimant is precluded from climbing ladders, ropes, or scaffolds, and is limited to occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs. The claimant should have no concentrated exposure to dust, odors, fumes, and pulmonary irritants. The claimant is limited to routine tasks that are not performed at a fast production-rate pace, such as that found in assembly-line work.

(R. 28.)

Any assertion by Plaintiff that her chronic and widespread pain, depression, obesity, asthma, anemia, anxiety, arthritis, and history of right knee pain and surgery means that the RFC is not based on substantial evidence ignores the fact that the "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that **may affect his or her capacity to do work-related physical and mental activities.**"  Social Security Ruling ("SSR") 96–8p, 1996 WL 374184 at *2 (emphasis added).  In other words, "[t]he mere presence of a medical condition is not per se disabling.  The claimant must also show that the condition causes functional limitations." *Martin v. Astrue*, No. 09-cv-1998 (RHK/JJG), 2010 WL 2787437 at *6 (D. Minn. June 7, 2010) (citing *Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990)).

As set forth above, the Commissioner must determine a Plaintiff's RFC based on all of the relevant evidence, including her own description of her limitations.  *See Myers*, 721 F.3d at 527 (citation omitted).  An ALJ should consider several factors, in addition to the objective medical evidence, in assessing a claimant's subjective symptoms, including daily activities; work history; intensity, duration, and frequency of symptoms; any side

effects and efficacy of medications; triggering and aggravating factors; and functional restrictions.  *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); 20 C.F.R. § 416.929; SSR 16-3p, 2016 WL 1119029, at *5-7 (S.S.A. Mar. 16, 2016) (listing these factors as relevant in evaluating the intensity, persistence, and limiting effects of a person's symptoms).  But the ALJ need not explicitly discuss each factor.  *See Goff v. Barnhart,* 421 F.3d 785, 791 (8th Cir. 2005).

Here, the ALJ analyzed Plaintiff's physical symptoms as required under 20 C.F.R. § 416.929 and found that they were not entirely consistent with the medical evidence and other evidence in the record.  (R. 29.)  The ALJ did take into account Plaintiff's low back pain, obesity, right knee arthritis, and foot pain by limiting her to a less than full range of light work with 4 hours stand/walking in an 8-hour workday.  (R. 29-30.)  In addition, the ALJ limited her to occasional stooping, kneeling, crouching, crawling, and climbing ladders, ropes, or scaffolds.  (R. 30.)  Further, the ALJ took into consideration Plaintiff's asthma by precluding jobs involving pulmonary irritants.  (R. 30-31.)  The Court finds that the functional limitations imposed by the ALJ, and the decision not to impose additional limitations, is supported by substantial evidence in the record as a whole. While there is no dispute that Plaintiff suffered from back pain, as reflected in the record prior to January 2021, the MRI of her back in December 2020 showed no acute findings and only slight disc bulges.  (R. 557.)  Her physical examination was also largely normal, showing she was not in acute distress, she had pain mainly with increased extension, she was able to rotate without pain, there were no concerns noted with lateral bending, and her straight leg raising was negative for pain.  (R. 558.)  Further, Plaintiff was negative

for numbness, tingling, weakness, limping, hip pain, incontinence or saddle anesthesia, and her muscle strength was a full 5/5 bilaterally.  (R. 557-58).  Moreover, Plaintiff's gait was normal.  (R. 558.)  While Plaintiff was told to come back if her pain did not improve as to her back, there is no indication that she sought extensive treatment specifically for her back in 2021 (outside of complaints related to her obesity) through the date of the ALJ's decision.  In other words, the treatment record is limited with respect to any claim by Plaintiff that she should have been assigned a stricter limitation based on her back pain.  *See Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (finding that conservative treatment is a proper factor for an ALJ to consider in weighing subjective reports).  Similarly, the record is sparse as to treatment of the pain/swelling in her knees and arthritis, especially as to 2021, and the treatment of her knee pain in October 2020 was conversative, her pain was getting better, and her range of motion was normal.  (R. 742-43.)  The same is true as to her heel/foot pain, which only involved conservative treatment of wearing tennis shoes, stretching and icing regularly, and taking pain medications.[17]  (*See, e.g.*, R. 553, 902.)

---

[17]     The Court notes that Plaintiff submitted to the Appeals Council a February 1, 2022 letter from a treating Physician Assistant ("PA") and a medical record dated January 21, 2022—both after the ALJ's decision.  (R. 14-18.)  "The Appeals Council must consider evidence submitted with a request for review if it is '(a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision.'"  *Bergmann v. Apfel*, 207 F.3d 1065, 1069 (8th Cir. 2000) (quoting *Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995)).  "In order [t]o be 'new,' evidence must be more than merely cumulative of other evidence in the record."  *Id.*  "To be 'material,' the evidence must be relevant to claimant's condition for the time period for which benefits were denied.  Thus, to qualify as 'material,' the additional evidence must not merely detail after-acquired conditions or post-decision deterioration of a pre-existing condition."  *Id.* at 1069-70.  In addition, the Appeals Council will review a case based on new evidence if it meets the aforementioned

Further, while Plaintiff suffered from anemia, as of September 2021 her hemoglobin levels were near normal (R. 1007), despite the fact that she was only taking oral iron supplements because she did not want to engage in an intravenous infusion. *See Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("Evidence of effective medication resulting in relief, for example, may diminish the credibility of a claimant's complaints.") (citing *Rose v. Apfel*, 181 F.3d 943, 944 (8th Cir. 1999)).

Moreover, the ALJ's physical RFC was consistent, and even stricter than that set by the state agency consulting medical doctor. (R. 28, 170-71.) "Courts have routinely upheld ALJ decisions that give significant weight to the opinions of consultative examiners, testifying experts, and state agency consultants when the ALJ's decision to do

---

requirements and "there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 416.1470(a)(5); *see also Craig M. v. Berryhill*, No. 18-cv-908 (NEB/DTS), 2019 WL 2648029, at *2 (D. Minn. June 10, 2019), *R. & R. adopted by*, 2019 WL 2644199 (D. Minn. June 26, 2019). However, when the Appeals Council denies review of an ALJ's decision after reviewing newly submitted evidence, a reviewing court does not evaluate the Appeals Council's decision to deny review but rather examines the record as a whole, including the additional evidence, to determine whether it supports the ALJ's decision. *See McDade v. Astrue*, 720 F.3d 994, 1000 (8th Cir. 2013). The Court finds that the two documents are cumulative and, in any event, further support the ALJ's restricted RFC for Plaintiff. Indeed, while there is no dispute that Plaintiff suffered pain, as noted by the PA, the PA did not rely on the most recent MRI of her back in 2020, instead apparently believing a 2017 MRI was the "most recent." (R. 14.) The 2017 MRI he relied on showed no acute findings with respect to the PA's assessment, and he failed to set forth any specific limitations for Plaintiff or corresponding support. (R. 14.) The 2020 MRI also showed no acute findings and only slight disc bulges. (R. 557.) Moreover, the results of the musculoskeletal examination from the January 21, 2021 visit were that Plaintiff: had a normal gait, sat without pain, was able to heel toe walk, had no groin pain, displayed normal strength in her extremities, and had a normal affect, although she did display pain with full flexion and extension in her back. (R. 16-17.) These results do not undermine the RFC assessed to Plaintiff.

so is supported by substantial evidence in the record." *Michael T. B. v. Kijakazi*, No. 20-CV-1779 (WMW/ECW), 2021 WL 7082736, at *17 (D. Minn. Dec. 3, 2021), *R. & R. adopted*, 2022 WL 507389 (D. Minn. Feb. 18, 2022) (quoting *Belinda B. v. Saul*, No. 20-cv-488 (JRT/LIB), 2021 WL 537932, at *13 (Jan. 28, 2021) (collecting cases)).

As noted by the ALJ (R. 31) and argued by the Commissioner (Dkt. 17 at 10), Plaintiff's medical provider was also skeptical of the level of pain claimed by Plaintiff, noting that "the patient is applying for SSDI for pain, and as such there is a financial incentive to remain disabled by their pain." (R. 753.) An ALJ may take into account evidence of a disincentive to work when assessing claims of disabling pain. *See Larson v. Astrue*, No. CIV. 12-97 PAM/JJK, 2013 WL 510840, at *22 (D. Minn. Jan. 14, 2013) (citation omitted), *R. & R. adopted*, 2013 WL 510094 (D. Minn. Feb. 12, 2013).

With respect to Plaintiff's mental limitations, the ALJ limited her "to routine tasks that are not performed at a fast production-rate pace, such as that found in assembly-line work." (R. 28.) Although the record supports that Plaintiff was suffering from anxiety, bipolar disorder, and depression, her mental status examinations, including those of her concentration, attention, memory, mood, and judgment, were largely normal. (*See*, *e.g.*, R. 497, 503, 506, 524, 752, 1029.) Further, the record supports that she was doing better with her medications, despite her depression and anxiety. (*See*, *e.g.*, R. 497, 503.) In addition, the mental RFC is largely supported by state agency psychologist Dr. Lovko's functional limitations for Plaintiff. (R. 176.)

Not only does the medical record support the RFC, but Plaintiff's daily activities also cut against more onerous restrictions based on her physical and mental limitations,

including any assertion that she must have limited contact with others.  "[I]t is well-settled law that 'a claimant need not prove she is bedridden or completely helpless to be found disabled.'"  *Reed v. Barnhar*t, 399 F.3d 917, 923 (8th Cir. 2005) (quoting *Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir. 1989)).  However, a claimant's daily activities are one factor an ALJ must consider when evaluating the claimant's testimony and subjective limitations.  *See Swarthout v. Kijakazi*, 35 F.4th 608, 612 (8th Cir. 2022) ("While daily activities alone do not disprove disability, they are a factor to consider in evaluating subjective complaints of pain.").  Here, Plaintiff testified that she drove daily, went grocery shopping, and took care of her 15-year-old daughter and her two 5-year-old grandchildren.  (R. 45-46, 49.)  The ALJ properly discounted Plaintiff's subjective limitations based on her full-time care of three minors and related daily activities.  *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (affirming ALJ's discount of claimant's subjective complaints of pain where the claimant was able to care for one of his children on daily basis); *see generally, Thomas v. Berryhill*, 881 F.3d 672, 676 (8th Cir. 2018) (noting that "even someone with severe physical and mental impairments may nonetheless be able to work," and affirming ALJ's decision to disregard opinions of provider favoring finding of disability where claimant's self-reported daily activities of caring for her children, preparing food, doing housework, shopping, and driving a car "showed that she could work").

In sum, the Court finds that the ALJ's decision to discount the Plaintiff's subjective physical and mental limitations and the RFC assessed by the ALJ was supported by substantial evidence in the record.  Even to the extent that there is some

evidence contrary to the decision of the ALJ, this does not change this Court's decision. *See Johnson v. Colvin*, 788 F.3d 870, 873 (8th Cir. 2015) (mere fact that some evidence may support conclusion opposite to that of Commissioner's does not allow court to reverse ALJ's decision).

For all these reasons, the Court affirms the decision of the Commissioner.

### V.    ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1.    Plaintiff Shilitha C.'s Motion for Summary Judgment (Dkt. 11) is **DENIED**;

2.    Defendant Commissioner of Social Security Administration, Martin J. O'Malley's, Motion for Summary Judgment (Dkt. 16) is **GRANTED**; and

3.    The Complaint is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

DATED: February 14, 2024                    *s/Elizabeth Cowan Wright*
                                            ELIZABETH COWAN WRIGHT
                                            United States Magistrate Judge